FILED
APR 0 8 2010

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN R. DIXON,                                CV. 09-1091-PK

                                                FINDINGS AND
               Plaintiff,                       RECOMMENDATION

v.

SENTINEL INSURANCE
COMPANY, LTD.,

               Defendant.

PAPAK, Magistrate Judge:

        Plaintiff Steven Dixon pursues a breach of contract cause of action against defendant

Sentinel Insurance Company arising out of a homeowner's insurance policy issued by Sentinel.

This court has subject matter jurisdiction under 28 U.S.C. § 1332. The parties' cross motions for

summary judgment are now before the court. For the reasons set forth below, Sentinel's motion

for summary judgment (#9) should be granted and Dixon's cross motion for summary judgment

(#14) should be denied.

FINDINGS AND RECOMMENDATION – PAGE 1

## BACKGROUND

Sentinel Insurance issued a homeowner's insurance policy for Shane and Danielle Billmyre's residence.  While the policy was in effect, Dixon suffered injuries when he was hit by train after the Billmyres' son, Travis, served him alcohol at the Billmyre residence, despite that Dixon was a minor at the time.  The parties dispute whether Travis Billmyre was an insured under the terms of the homeowners' insurance policy.

### I.     The Underlying Incident

In July 2007, Shane and Danielle Billmyre asked their son, Travis, to feed their pets and pick up their mail while they were away on vacation.  Travis did not live with his parents.  The Billmyres gave Travis a key so that he could get in the house.  They also specifically told Travis that he could not host any parties at the house while they were away.

On July 21, 2007, while at the Billmyres' residence to attend to the pets and mail, Travis decided to have a party at the house to celebrate his twenty-second birthday.  Dixon was among the large number of people who attended the party.  Dixon consumed alcohol while at the party, became intoxicated and passed out on the train tracks adjacent to the Billmyre residence.  At some point around midnight, a train hit Dixon, causing serious injuries.

Dixon filed suit against Shane, Danielle and Travis Billmyre in January 2008.  Sentinel refused to defend or indemnify Travis on the ground that he was not insured under the Billmyre homeowner's insurance policy.  In May 2009, Travis and Dixon executed a stipulated judgment and money award in favor of Dixon and filed it with the Clackamas County Court.  In July 2009, Travis assigned his rights under the Sentinel policy to Dixon.  This suit followed.

### II.    The Terms of the Insurance Policy

In relevant part, the homeowner's policy defines "insured" as:

FINDINGS AND RECOMMENDATION – PAGE 2

    **a.**      You and residents of your household who are:

           **(1)**    Your relatives; or

           **(2)**    Other persons under the age of 21 and in the care of any person named above;

    **b.**      A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

           **(1)**    24 and your relative; or

           **(2)**    21 and in your care or the care of a person described in **a.(1)** above; or

    **c.**      Under Section **II**:

           **(1)**    With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in **a.** or **b.** above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any business or without consent of the owner . . .

(Wise Decl. Ex. 1 at 27; Maloney Aff. Ex. 1 at 27.)

Section II of the policy sets forth its personal liability coverage. Under the heading "Coverage F – Medical Payments to Others", Section II indicates that it provides coverage for medical payments incurred by others as a result of an accident that causes bodily injury. Medical payments coverage, however, applies only:

    **1.**      To a person on the "insured location" with the permission of an "insured"; or

    **2.**      To a person off the "insured location", if the "bodily injury":

           **a.**    Arises out of condition on the "insured location" or the ways immediately enjoining;

           **b.**    Is caused by the activities of an "insured";

           **c.**    Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

      **d.**      Is caused by an animal owned by or in the care of an "insured".

(Wise Decl. Ex. 1 at 40; Maloney Aff. Ex. 1 at 40.)

      Apart from "Coverage F – Medical Payments to Others," Section II makes no other specific mention of animals. Rather, under the heading "Coverage E – Personal Liability," Section II provides that Sentinel will defend and indemnify an insured for bodily injury and property damage claims, without any specific provision related to animals. Moreover, Section II excludes claims for damage to property owned by the insured and claims related to certain watercraft, among other exclusions, but provides no specific exclusion for claims related to animals.

## LEGAL STANDARD

      Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court cannot weigh the evidence or determine the truth and must construe the evidence in the light most favorable to the nonmoving party. *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air. Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (citation omitted).

      On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the non-moving party. Fed. R. Civ. P. 56; *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). A court may not grant

FINDINGS AND RECOMMENDATION – PAGE 4

summary judgment if it finds unresolved issues of material fact, even in situations where the cross motions allege that no disputed facts exist. *Id.*

## DISCUSSION

"When a federal court sits in diversity, it must look to the forum state's choice of law rules to determine the controlling substantive law." *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). In Oregon, before embarking on a choice of law analysis, a court must first determine whether the laws of the states having a connection with the controversy are in conflict on the particular issue. *Lilienthal v. Kaufman*, 239 Or. 1, 5, 395 P.2d 543 (1964). "The proponent of the law of another forum has the obligation to identify material differences between the applicable law of Oregon and of the other forum." *Spirit Partners, LP v. Stoel Rives LLP*, 212 Or. App. 295, 301,157 P.3d 1194 (2007). Here, the parties agree that Oregon law governs the interpretation of the insurance policy at issue. I therefore apply Oregon law.

In Oregon, the first rule of contract construction is to "ascertain the intention of the parties" through analysis of the terms, conditions, and definitions in the contract. *Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469, 836 P.2d 703, 705 (1992) (quotation omitted); *see also* Or. Rev. Stat. § 742.016. When parties assert competing interpretations of a term in the policy, a court must engage in a series of analytical steps. *Id.* at 470. The court first looks to whether the policy defines the phrase in question. *Holloway v. Republic Indemnity Co. of Am.*, 341 Or. 642, 650, 147 P.3d 329 (2006). If the policy does not define the phrase, the court must consider whether the phrase has a plain meaning, "*i.e.*, whether it is susceptible to only one plausible interpretation." *Id.* (citation omitted). If, however, the phrase in question has more than one plausible interpretation, the court must then determine whether both interpretations remain reasonable in light of the phrase's particular context and the broader context of the policy

FINDINGS AND RECOMMENDATION – PAGE 5

as a whole. *Id.* If that contextual analysis yields two or more reasonable interpretations, then the court should construe the remaining ambiguity against the drafter. *Id.*

Here, the parties dispute whether Travis Billmyre is an insured within the meaning of the policy. The policy defines "insured," but the parties provide competing interpretations of that definition. Thus, I must determine whether both parties' interpretations are plausible and reasonable in light of the policy as a whole.

The parties' briefing focuses in part on the importance and meaning of the policy's limit on personal liability coverage for medical payments to others. For off-premises injuries, the policy extends coverage for medical payments to others if those injuries were, inter alia, "caused by an animal owned by or in the care of an 'insured.'" That limit is not relevant, however, because the definition of insured refers to coverage "[u]nder Section II," which covers not only liability for medical payments to others, but also liability for defense costs and damages that the insured is legally obligated to pay, which are at issue here. I therefore focus my analysis on the policy's definition of "insured."

The definition of "insured," begins with "[u]nder Section II" and then states, "[w]ith respect to animals or watercraft to which this policy applies." I find that the phrase "to which this policy applies" modifies watercraft alone. While the policy separately sets forth the types of watercraft that it covers, the policy does not separately define the animals that it covers. Thus, the phrase is meaningless as applied to animals because the policy applies to all animals owned by the insured.

The real issue is the meaning of the phrase "with respect to animals." Dixon asserts that the phrase "with respect to animals" merely requires that the person be engaged in the care of animals at the time of the occurrence, and does not require that the animal caused the harm.

FINDINGS AND RECOMMENDATION – PAGE 6

Sentinel contends that the phrase means that a person responsible for caring for an animal is an insured only for claims arising injuries or damage caused by the animal while in that person's care.

Dixon's definition is not plausible. Under Dixon's interpretation, the policy provides no definition or other limit for when care of animals ceases and coverage would not apply. Instead, Dixon asserts that coverage applies in this case because the harm occurred while Travis remained on the premises performing his care-giving duties. Thus, Dixon's interpretation requires that a court or fact finder provide a reasonable limit on personal liability coverage for animal caregivers, because the policy itself does not provide a limit.

In contrast, Sentinel's interpretation of "with respect to animals" is straightforward. Under its interpretation, the policy only extends personal liability coverage for harm caused by animals, and thus there is no need to determine a spacial or temporal limit to when a person is or is not engaged in care for animals. Moreover, the phrase "[u]nder Section II" appears immediately before "with respect to animals." A plain reading of the two phrases in conjunction indicates that a person has personal liability coverage "with respect to animals," not "with respect to animal care." Thus, while it is unclear why the definition of insured does not explicitly limit coverage to harm caused by animals when the medical payments to others section does explicitly include that limitation, Sentinel should prevail because it offers the only plausible interpretation.

Moreover, the definition's use of the phrase "legally responsible for these animals" contributes to my conclusion that coverage extends only to harm caused by animals. Responsible means "liable to be called on to answer" or "liable to be called to account as the primary cause, motive, or agent (a committee responsible for the job)." Merriam-Webster Online Dictionary, *at* http://www.merriam-webster.com/dictionary/responsible (April 6, 2010). Thus,

FINDINGS AND RECOMMENDATION – PAGE 7

the phrase "legally responsible for these animals" extends coverage to the person who is answerable for the animals. Under Dixon's interpretation, however, the animal caregiver is answerable for any harm that might occur while the caregiver performs his or her duties. Dixon's interpretation strains against the plain meaning of the phrase, "legally responsible for these animals," because the phrase only refers to animals, not the premises generally.

In summary, although the policy is not as clear as it could be, I find only one reasonable interpretation of the phrase "with respect to animals" in the policy's definition of insured. Under the only reasonable interpretation, the policy extends personal liability coverage to an animal caregiver only for harm caused by the animals while in that person's care.

## CONCLUSION

Sentinel's motion for summary judgment (#9) should be granted, Dixon's cross motion for summary judgment (#14) should be denied and judgment should be entered accordingly.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date. If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 8th day of April 2010.

Honorable Paul Papak
United States Magistrate Judge

FINDINGS AND RECOMMENDATION – PAGE 8